UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

SCOTT TARANTO and
SELINA TARANTO,

Debtors.
-------------------------------------------------------X

Case No.: 10-76041-ast
Chapter 13

**DECISION AND ORDER REGARDING**
**OBJECTIONS TO PROOFS OF CLAIMS**

The issue before the Court is what documentation must a claimant provide to prove its right to payment under a claim for assigned credit card debt, when the debtors have objected to the claim and rebutted the presumption of *prima facie* validity. Specifically, this decision will address the following: (1) when an objection to a proof of claim is filed, what documentation of the credit card debt and the assignment thereof is required to give rise to the presumption of validity which arises from a properly filed claim; (2) what evidence is required from a debtor who files a claim objection to rebut the presumption of validity and thereby shift the burden of proof back to the claimant; and (3) if the debtor has rebutted the presumption, what evidence of the credit card debt and the assignment thereof is required for the claimant to meet its ultimate burden of proof.

Pending before this Court is the objection to claims (the "Objection") filed by the debtors Scott Taranto and Selina Taranto (collectively the "Debtors"), which seeks to expunge Claim Number 1-1 filed by eCAST Settlement Corporation ("eCAST"), as assignee of HSBC Consumer Lending (USA) Inc. ("HSBC"); Claim Number 2-1 filed by eCAST, as assignee of FIA Card Service a/k/a Bank of America ("FIA"); and Claim No. 3 filed by eCAST, as assignee

of HSBC Bank Nevada and its Assigns ("HSBC Nevada") (collectively the "eCAST Claims").[1] [dkt item 28] Each of the eCAST Claims arises from credit card debt allegedly owed by Debtors to various credit card issuers, all of which were allegedly assigned to eCAST. The Objection was filed pursuant to 11 U.S.C. § 502 and Rule 3007 of the Federal Rules of Bankruptcy Procedure, and alleges two alternate bases for disallowance of the eCAST Claims: (1) eCAST has failed to prove that Debtors' respective credit card debts owed to the original credit card issuers were assigned to eCAST; and (2) eCAST failed to comply with a requirement of New York law regarding assignment of credit card debts and other account obligations. For the reasons herein, the Objection is granted in part and denied in part as to the first issue, and denied as to the second.

## BACKGROUND

*Procedural Background*

On August 2, 2010, Debtors filed a voluntary petition for relief under Chapter 13 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").[2] [dkt item 1] In accordance with Rule 3002(c), the deadline to file non-governmental proofs of claims was December 20, 2010, which was ninety (90) days after the date first set for the meeting of creditors held pursuant to Section 341(a).

On August 20, 2010, eCAST, as assignee of HSBC, timely filed a general unsecured claim in the amount of $11,343.02 for an unpaid pre-petition credit card balance allegedly owed by Debtors. The claim was designated as Claim Number 1-1 ("Claim No. 1") on the Court's

---

[1] Debtors had also objected to Claim Number 6-1 filed by Palisades Collections, LLC ("Palisades"), as assignee of Heritage Chase, and Claim Number 9-1 filed by LVNV Funding, LLC ("LVNV"). [dkt item 28] Palisades and LVNV did not file written responses to Debtors' Objection and failed to appear at a hearing on the Objection held on August 9, 2011. Therefore, the Court held that Claims Number 6-1 and 9-1 would be expunged, and an Order expunging those claims was entered on August 15, 2011. [dkt item 34]

[2] All statutory references in this Decision and Order are the Bankruptcy Code, 11 U.S.C. §§ 101-1532, unless otherwise indicated.

Claims Register. Debtors had listed a debt owed to "HFC Customer Service" in the amount of $11,337.00 on their Schedule F, which is similar to Claim No. 1. [dkt item 10]

Also on August 20, 2010, eCAST, as assignee of FIA, timely filed a general unsecured claim in the amount of $4,346.58 for an unpaid pre-petition credit card balance allegedly owed by Debtors. The claim is designated as Claim Number 2-1 ("Claim No. 2") on the Court's Claims Register. Debtors had listed an undisputed debt owed to "Bank of America" in the amount of $4,242.00 on Schedule F, which is similar to Claim No. 2. [dkt item 10]

Additionally, on August 20, 2010, eCAST, as assignee of HSBC Nevada, timely filed a general unsecured claim in the amount of $506.18 for an unpaid pre-petition credit card balance allegedly owed by Debtors. The claim is designated as Claim Number 3-1 on the Court's Claims Register ("Claim No. 3"). Debtors do not list a debt on Schedule F that is similar to Claim No. 3.

On June 22, 2011, Debtors filed their Objection to the eCAST Claims alleging, *inter alia*, that the claims should be denied for inadequate documentation proving an assignment of the debts. [dkt item 28]

On July 7, 2011, eCAST filed a Response. [dkt item 31] The Court set a hearing on the Objection for August 9, 2011.

On August 5, 2011, Debtors filed an Affirmation in Reply to eCAST's Response, which includes affidavits executed by each of the Debtors. [dkt item 34]

A hearing was held on August 9, 2011. As stated on the record of the hearing and as memorialized in an Order entered on August 15, 2011, eCAST was given until September 30, 2011, to file with the Court additional documentary evidence in support of its claims, and Debtors had until October 11, 2011, to file a letter with the Court indicating whether they

intended to go forward with the Objection; in such event, a further hearing was to be held on October 18, 2011. [dkt item 34]

On September 23, 2011, eCAST filed Affidavits in further support of the eCAST Claims. [dkt item 36]

On October 10, 2011, Debtors filed a letter stating their intent to proceed with their objections to the eCAST Claims. [dkt item 37]

On October 18, 2011, the Court held a further hearing on the Objection, at which both sides waived an evidentiary hearing on the Objection. At the conclusion of the hearing, the Court directed that post-hearing briefs supporting each party's position be filed by November 1, 2011, after which time the Objection would be placed under submission.

On October 31, 2011, eCAST filed a brief in support of its response to the Objection. [dkt item 38] Debtors did not file any additional briefing.

The Court will now address the documentation related to each of the eCAST Claims.

*Claim No. 1*

On August 20, 2010, eCAST filed Claim No. 1 using the Official Form 10 ("Form 10 No. 1"), which stated that eCAST had a claim in the amount of $11,323.02, the basis for the claim was credit card debt, the last four digits of the account was 7827, and Debtor may have scheduled the account as being with HSBC Consumer Lending (USA) Inc. Attached to Form 10 No. 1 was an Assignment of Accounts from HSBC, dated October 1, 2006 ("Assignment No. 1"). Assignment No. 1 stated the following:

> HSBC Consumer Lending (USA) Inc. a Delaware Corporation, as managing corporation for HFC Company LLC and Beneficial Company LLC and its lending subsidiaries ("Seller"), for value received, without recourse, transfers, sells, assigns, conveys, grants and delivers to eCAST Settlement Corporation, ("Buyer") all right, title and interest in and to (i) Seller's unsecured consumer loan accounts which are described on computer files furnished by Seller to Buyer; and (ii) all remittances of such accounts (each, an "Account"). This assignment shall have effect with respect to each Account on the day immediately following the day the Chargeoff File Identifying the Account is delivered from Seller to Buyer.

Assignment No. 1 does not specifically identify Debtors or any specific accounts that were sold by HSBC to eCAST. Assignment No. 1 was signed by Mushtaq H. Sahaff as Vice President of HSBC.

Also attached to Form 10 No. 1 was an unsigned document titled Explanation of Unavailable or Voluminous Documentation Not Attached ("Voluminous Document No. 1"). Voluminous Document No. 1 listed the seller as HSBC and the last four digits of the account number as being 7827. Below this information, Voluminous Document No. 1 stated the following:

> Assignment of Account
>
> Documentation related to the sale of this account from HSBC CONSUMER LENDING (USA) INC. to eCAST includes voluminous documents that are not attached. eCAST purchased the account from HSBC CONSUMER LENDING (USA) INC. as evidenced by the assignment attached hereto. This account was transferred to eCAST on or about 10/25/2008 through delivery of a voluminous electronic sale file containing the debtor's information as well as private, non-public personal and account information of other customers.
>
> Summary of Account Information
>
> This claim arises from the use of a credit card debt. Documentation related to the account is voluminous and/or may no longer be available. A summary of the account information is provided.

As noted, Voluminous Document No. 1 is not signed or made under oath.

The last document attached to Form 10 No. 1 was an unsigned account summary ("Summary No. 1"). Summary No. 1 stated the account debtor's name as Scott Taranto, listed the account debtor's address as the address on the Debtors' petition, and listed the last four digits of Debtor Scott Taranto's social security number. Summary No. 1 also identified the account number as ending in 7827 and listed a current balance owed on the account as $11,343.02.

On August 8, 2011, after Debtors filed their Objection, eCAST amended Claim No. 1 by including Debtors' Beneficial New York, Inc. credit line agreement and monthly account statements ("Monthly Statements No. 1"). The amended Claim was designated as Claim 1-2 on the Claims Register.

On September 16, 2011, eCAST filed an Affidavit of Purchase ("Affidavit No. 1") signed by Edward P. Benison ("Benison"), an Executive Vice President of eCAST, in which Benison declared under penalty of perjury that eCAST purchased the account number ending in 7827 from HSBC, that eCAST is the current owner of the account, and that eCAST caused a proof of Claim for the account to be filed in Debtors' case. [dkt item 36-1] However, the Benison Affidavit No. 1 is not accompanied by an affidavit from HSBC attesting to the sale of this specific credit card account to eCAST.

*Claim No. 2*

On August 20, 2010, eCAST filed Claim No. 2 using the Official Form 10 ("Form 10 No. 2"), which stated that eCAST had a claim in the amount of $4,346.58, the basis for the claim was credit card debt, the last four digits of the account was 0402, and Debtor may have scheduled the account as being with FIA Card Services a/k/a Bank of America. Attached to Form 10 No. 2 was an Assignment of Accounts from FIA ("Assignment No. 2"), dated December 29, 2008.[3]

[3] Assignment No. 2 stated the following:

Similar to Claim No. 1, eCAST submitted an unsigned Explanation of Unavailable or Voluminous Documentation Not Attached for Claim No. 2, which listed the seller as FIA Card Services, NA and the last four digits of the account number as being 0402 ("Voluminous Document No. 2").[4]

The last document attached to Form 10 No. 2 was an unsigned account summary ("Summary No. 2"). Summary No. 2 stated the account debtor as Selina Taranto, listed the account debtor's address as the address listed in the Debtors' Petition, and listed the last four digits of Debtor Selina Taranto's social security number. Summary No. 2 also identified the account as ending in 8409 and listed a current balance owed on the account of $4,346.58.

On August 8, 2011, after Debtors' Objection was filed, eCAST amended Claim No. 2 by including Selina Taranto's Bank of America monthly account statements for the months August

---

> FIA Card Services, N.A. (the "Seller"), pursuant to the terms, exclusions and provisions of the Purchase Agreement for Forward Flow Accounts dated as of July 1, 2008 between eCAST Settlement Corp (the "Buyer") and the Seller (the "Agreement"), for value received, without recourse, transfers, sells and assigns, to the Buyer, all right, title and interest in and to (i) each of the Seller's charge-off, unsecured consumer credit card and line of credit accounts, identified in a computer file delivered herewith, with respect to which the debtor of each account filed under Chapter 13 of the United States Bankruptcy Code; and (ii) all proceeds of such accounts (the "Accounts") after the Closing Date for this sale.

Assignment No. 2 does not specifically identify Debtors or any specific accounts that were sold. Assignment No. 2 was signed by Debra L. Pellicciaro as Assistant Vice President of FIA.

[4] Voluminous Document No. 2 stated the following:

> Assignment of Account
>
> Documentation related to the sale of this account from FIA CARD SERVICES, NA to eCAST includes voluminous documents that are not attached. eCAST purchased the account from FIA CARD SERVICES, NA as evidenced by the assignment attached hereto. This account was transferred to eCAST on or about 12/29/2008 through delivery of a voluminous electronic sale file containing the debtor's information as well as private, non-public personal and account information of other customers.
>
> Summary of Account Information
>
> This claim arises from the use of a credit card debt. Documentation related to the account is voluminous and/or may no longer be available. A summary of the account information is provided.

2007 to February 2008 ("Monthly Statements No. 2"). The amended Claim was designated as Claim 2-2 on the Claims Register.

On August 10, 2011, eCAST filed an Affidavit of Sale and Certification of Debt ("Affidavit No. 2") signed by Melinda K. Stephenson ("Stephenson"), a Bank Officer of FIA. Affidavit No. 2 stated:

> Account number [ending in] 5274, formerly account number [ending in] 0402, originally known as [ending in] 0819, was opened on 08/29/02 by [Debtors].
>
> Pursuant to the terms of the card member agreement with FIA Card Services, N.A., there was due and payable $4473.46 as of the charge off date of 11/28/08.
>
> Said agreement and account was, on 12/16/2008, sold, transferred and set over unto eCAST Settlement Corporation, with full authority to do and perform all acts necessary for collection, settlement, adjustment, compromise or satisfaction of the said claim, and as of that date, there was due and payable on this Account the sum of $4473.46, with all just and lawful offsets, payments, and credits having been allowed.

C*laim No. 3*

On August 20, 2010, eCAST filed Claim No. 3 using the Official Form 10 ("Form 10 No. 3") (collectively with Form 10 No. 1 and Form 10 No. 2, "Form 10 Nos. 1-3"), which stated that eCAST had a claim in the amount of $506.18, the basis for the claim was credit card debt, the last four digits of the account was 4565, and Debtor may have scheduled the account as being with HSBC Nevada and its assignee.

Attached to Form 10 No. 3 was an Assignment of Accounts from HSBC Nevada and HSBC Card Services (III) Inc. ("Assignment No. 3") (collectively with Assignment No. 1 and Assignment No. 2, "Assignment Nos. 1-3"), which was undated. [5] Assignment No. 3 does not

[5] Assignment No. 3 stated the following:

> HSBC Bank Nevada, N.A. and HSBC Card Services (III) Inc. (each, the "Seller"), for value received, without recourse, transfers, sells, assigns, conveys, grants and delivers to eCAST Settlement Corporation, ("Buyer") all right, title and interest in and to (i) each unsecured consumer credit card account described on each computer file furnished to the Buyer by the Seller

specifically identify Debtors or any specific accounts that were sold. Assignment No. 3 was signed by Stephen C. Basilotto as Executive Vice President of HSBC Nevada and HSBC Card Services (III) Inc.

Also attached to Form 10 No. 3 was an unsigned document titled Explanation of Unavailable or Voluminous Documentation Not Attached ("Voluminous Document No. 3") (collectively with Voluminous Document No. 1 and Voluminous Document No. 2, "Voluminous Document Nos. 1-3").[6] Voluminous Document No. 3 listed the seller as HSBC Nevada and HSBC Card Services and the last four digits of the account number as being 4565.

The last document attached to Form 10 No. 3 was an unsigned account summary ("Summary No. 3") (collectively with Summary No. 1 and Summary No. 2, "Summary Nos. 1-3"). Summary No. 3 stated the account debtor's name as Scott Taranto, listed the account debtor's address as Debtors' address, and the last four digits of Debtor's social security number.

---

> in connection with this assignment (the "Accounts") effective as of the date the purchase price for each such Account is delivered by Buyer to Seller; and (ii) all proceeds of each Account after the close of business on the date the initial computer file relating to such Account is delivered by Seller to Buyer.
>
> The Accounts are accounts with respect to which the Seller has entered on its system that a debtor of the account filed under Chapter 13 of the United States Bankruptcy Code.

[6] Voluminous Document No. 3 stated the following:

> Assignment of Account
>
> Documentation related to the sale of this account from HSBC BANK NEVADA, NA and HSBC CARD SERVICES (III) to eCAST includes voluminous documents that are not attached. eCAST purchased the account from HSBC BANK NEVADA, NA AND HSBC CARD SERVICES (III) as evidenced by the assignment attached hereto. This account was transferred to eCAST on or about 10/21/2008 through delivery of a voluminous electronic sale file containing the debtor's information as well as private, non-public personal and account information of other customers.
>
> Summary of Account Information
>
> This claim arises from the use of a credit card debt. Documentation related to the account is voluminous and/or may no longer be available. A summary of the account information is provided.

Summary No. 3 also identified the account as ending in 4565 and listed a current balance owed on the account of $506.18.

On August 8, 2011, after Debtors' Objection was filed, eCAST amended Claim No. 3 by including Debtors' HSBC Nevada and HSBC Card Services Monthly Account Summaries for the months November 2007 to February 2008 ("Monthly Statements No. 3") (collectively with Monthly Statements No. 1 and Monthly Statements No. 2, "Monthly Statements Nos. 1-3"). The amended Claim was designated as Claim 3-2 on the Claims Registry.

On September 16, 2011, eCAST submitted an Affidavit of Purchase also signed by Benison ("Affidavit No. 3") (collectively with Affidavit No. 1 and Affidavit No. 2, "Affidavit Nos. 1-3") and declared under penalty of perjury that eCAST purchased the account number ending in 4565 from HSBC Nevada, that eCAST is the current owner of the account, and that eCAST caused a Proof of Claim for the account to be filed in the Debtors' case; however, eCAST did not provide an affidavit from HSBC Nevada or HSBC Card Services attesting to the sale of this specific account to eCAST.

**DISCUSSION**

The issues before the Court in resolving Debtors' Objection to eCAST's Claims are: (1) whether any of eCAST's Claims are entitled to the presumption of *prima facie* validity which arises from a properly filed claim; (2) if so, whether Debtors have met their burden of going forward so as to rebut the presumption of validity as to any of the eCAST Claims and thereby shift the burden of proof back to eCAST; and (3) if Debtors have rebutted the presumption, whether eCAST has met its ultimate burden of proving by a preponderance of the evidence that it is entitled to payment under its Claims. Additionally, the Court will address Debtors' argument

that eCAST is not entitled to payment under New York state law for having failed to provide Debtors' with notice of the assignments.

*A. Validity of the eCAST Claims and the Shifting Burden*

"After the commencement of a bankruptcy case, a debtor's creditors are entitled to file a proof of claim documenting their right to receive payment from the debtor's estate." *In re King*, 2010 WL 4290527, at *5 (Bankr. E.D.N.Y. Oct. 20, 2010) (citing *In re Peterson*, 2009 WL 994945, at *4 (Bankr. N.D. Ill. Apr. 10, 2009)); *see Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449, (2007)); *see also* 11 U.S.C. § 101(5)(A) (2011); FED. R. BANKR. P. 3003(c)(1). Once a proof of claim has been filed under 11 U.S.C. § 501, it "is deemed allowed, unless a party in interest objects." 11 U.S.C. § 502(a). "A proof of claim that complies with the filing and documentary requirements of Federal Rule of Bankruptcy Procedure 3001 and Official Form 10 'shall constitute *prima facie* evidence of the validity and amount of the claim.'" *King*, 2010 WL 4290527, at *5 (citing FED. R. BANKR. P. 3001(f)). The objecting party bears the burden of putting forth sufficient evidence to rebut the *prima facie* validity of the claim. *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 540 (S.D.N.Y. 2001) (citing *In re St. Johnsbury Trucking Co.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997)), *aff'd*, 221 B.R. 692 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 846 (2d Cir. 1999). The ultimate burden of proof, however, always lies with the claimant. *Primavera Familienstiftung*, 130 F. Supp. 2d at 540; *see generally Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15 (2000). As established in *Raleigh*, bankruptcy courts should apply the burden of proof standards in the same manner as non-bankruptcy courts would apply the burden of proof standards under non-bankruptcy law, since the burden of proof is a substantive aspect of the claims allowance process. *Id.* at 20-21.

*1. Prima Facie Validity of the eCAST Claims*

Debtors first allege that eCAST failed to meet the documentation requirements under Rule 3001 necessary to create *prima facie* validity for its Claims. Specifically, Debtors state that the Assignments of Accounts attached to the eCAST Claims, which purport to document the sale of the respective accounts from the original creditors to eCAST, fail to identify the specific accounts assigned and fail to mention that they include any debts owed to eCAST by either of the Debtors. Debtors further argue that the Account Summary for each claim merely includes a brief summary of the amount due with the Debtors' names and address, but fails to include a copy of the master agreement authorizing the charges and fees included in the Claim. Thus, Debtors argue that eCAST's Claims are unenforceable because eCAST is unable to prove that it is a valid assignee of the original creditors to whom a valid debt is owed, and as a result, the claims are not entitled to *prima facie* validity and should be expunged. eCAST, on the other hand, argues that it, as the alleged assignee of the original creditors, is not required to show any evidence of the assignment as it would be too burdensome to do so, and asserts that the documentation attached to its respective claims is sufficient to entitle the Claims to *prima facie* validity. Both sides are incorrect.

Bankruptcy Rule 3001 provides a mechanism by which assignees of debts are able to assert their claims in bankruptcy. Where, as here, a claim is transferred other than for security before a claim is filed, the Rule provides simply that "the proof of claim may be filed only by the transferee or an indenture trustee." FED. R. BANKR. P. 3001(e)(1). Bankruptcy courts are split on the documentation required from an assignee to establish a *prima facie* case under Rule 3001(f). Some courts interpret Rule 3001(e)(1) as eCAST has argued it to apply in this case – as obviating the need for a creditor to file any proof of the assignment so long as there does not

exist any competing claims. *See, e.g.*, *In re Simms*, 2007 WL 4468682, at *3 (Bankr. N.D. W. Va. Dec. 17, 2007) (opining that "[u]nder Rule 3001(e), when a claim is transferred before the filing of a proof of claim, there is no requirement that evidence of the assignment or transfer be filed with the claim."). The reasoning for this conclusion derives from the Advisory Committee Notes to the 1991 amendments to Rule 3001 which stated that Rule 3001 was "amended to limit the court's role to the adjudication of disputes regarding transfers of claim. If a claim has been transferred prior to the filing of a proof of claim, there is no need to state the consideration for the transfer or other evidence of the transfer." FED. R. BANKR. P. 3001(e)(1) Advisory Committee Notes (1991). Other courts disagree and hold that Bankruptcy Rule 3001(e) merely governs who is entitled to file the proof of claim and not what evidence is necessary to prove a right to payment, and that Rule 3001(e) does not serve as authority to relieve a creditor from providing proof of the assignment. *See In re O'Brien*, 440 B.R. 654, 661 (Bankr. E.D. Pa. 2010); *In re Kincaid*, 388 B.R. 610, 616-17 (Bankr. E.D. Pa. 2008).

This Court is of the view that Rule 3001(e) does not relieve an assignee creditor from the obligation to provide competent proof of the assignment and the underlying debt, but simply limits who may file the claim to the assignee who has acquired the claim. However, this Court agrees that for purposes of Bankruptcy Rule 3001 and solely for the purpose of triggering the presumption of *prima facie* validity, evidence of the assignment "does not have to be exacting – e.g., the documentation for the assignment does not have to specify a debtor's particular account number. Instead, evidence of a blanket assignment may suffice." *In re Samson*, 392 B.R. 724, 730 (Bankr. N.D. Ohio 2008).

Here, when eCAST filed its Claims on August 20, 2010, eCAST included: (1) Assignment Nos. 1-3 signed by the original credit card issuers, which reflect master

agreements under which the issuers sold and assigned to eCAST various unsecured consumer credit card accounts, with the precise names and numbers of the assigned accounts being described on computer files each issuer provided to the assignee; (2) an unsigned document referencing the specific credit card account at issue and stating that the documentation related to the sale of these accounts from the assignor were not attached due to the documents' voluminous size; and (3) an account summary identifying the account by last four digits of the number, the Debtors' by name and address and last four digits of their social security number, a date the account was opened, and a balance owed.[7]

This Court concludes that the eCAST Claims as initially filed and as they stood prior to Debtors' filing their Objection comply with the filing and documentary requirements of Federal Rule of Bankruptcy Procedure 3001 and Official Form 10 and thus constitute *prima facie* evidence of the validity and amount of the claims. eCAST has sworn under penalty of perjury that not only did it generically acquire a substantial series of accounts from each card issuer, and provided evidence from the issuer of such a generic sale, but has sworn that it acquired the specific accounts of these Debtors along with a specific balance due.

---

[7] The references to the last four digits of Debtors' account numbers and social security numbers is in compliance with Rule 9037(a)(1) of the Federal Rules of Bankruptcy Procedure regarding privacy protections required in filings with the Court, and the lack of full numbers on these publicly filed forms would not be held against eCAST. Rule 9037 states the following:

> Unless the court orders otherwise, in an electronic or paper filing made with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual, other than the debtor, known to be and identified as a minor, or a financial-account number, a party or nonparty making the filing may include only:
>
> (1) the last four digits of the social-security number and taxpayer identification number; [and] . . .
>
> (4) the last four digits of the financial-account number.

FED. R. BANKR. P. 9037(a)(1), (4).

The next question, therefore, is whether Debtors have met their burden to rebut the presumption of *prima facie* evidence by arguing that the Claims do not give rise to a legally enforceable right to payment.

*2. Rebutting the Presumption*

Once a proof of claim is accorded *prima facie* status, the burden of going forward with evidence contesting the claim shifts to the objector. *See, e.g., Primavera*, 130 F. Supp. 2d at 540; *O'Brien*, 440 B.R. at 659. Debtors, as the objectors, must produce "evidence equal in force to the *prima facie* case which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, 2010 WL 234827 (S.D.N.Y. Jan.22, 2010) (internal citation and quotation marks omitted).

Section 502(b) of the Bankruptcy Code provides nine grounds upon which a claim filed under § 501 may be disallowed. Debtors did not specify which ground, but they appear to be proceeding under § 502(b)(1), under which this Court may disallow any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." § 502(b)(1). Debtors assert that eCAST has not demonstrated a legal basis upon which Debtors would be liable to eCAST as opposed to the original credit card issuers who are listed in Debtors' Schedule F. "A claim will be deemed to have arisen pre-petition if the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation – a right to payment – under the relevant nonbankruptcy law." *Ogle v. Fidelity & Deposit Co. of Md.*, 586 F.3d 143, 146 (2d Cir. 2009) (quoting *In re Manville Forest Prods. Corp.*, 209 F.3d 125, 1229 (2d Cir. 2000)).

In an effort to defeat the eCAST Claims, Debtors have provided affidavits they each executed, in which they each state:

> I have reviewed the proofs of claim submitted by all of these creditors. I have never had any business or financial dealings directly with ECast Settlement Corporation, Palisades Collection, LLC or LVNV Funding, LLC and don't believe I owe any of them money. Additionally, I have never received any notifications from HSBC, FIA Card or HSBC Bank Nevada that they have assigned or transferred any debt that I owed to them to ECast Settlement Corporation. Finally, I have never received any notifications from Chase or Citibank, respectively that they assigned any debt that I owed to either of them to Palisades Collections, LLC and/or LVNV Funding, LLC, respectively.

[dkt item 28]

Because Debtors have affirmatively sworn that they had no dealings with eCAST nor do they believe they owe any money to eCAST, and given the lack of documentary evidence of a specific assignment of the respective credit card debts from the credit card issuers to eCAST contained in the Claims as they stood as of the time Debtors filed their Objection, this Court concludes that Debtors have rebutted the presumption of validity as to the eCAST Claims. Said otherwise, Debtors' affirmative denial of any dealings with eCAST and denial of any knowledge of an assignment of their accounts by HSBC, FIA, and HSBC Bank is evidence "equal in force" to the general assignment of general credit card accounts from HSBC, FIA, and HSBC Bank provided by eCAST as part of its Claims.

*3. The Claims under the Preponderance of the Evidence Standard*

The Court must now consider whether eCAST has met its burden of proof. "[L]ack of proper supporting documentation does not, in and of itself, result in a claim's disallowance; rather, it strips it of any *prima facie* validity, requiring the creditor to offer the supporting documentation to carry its burden of proof in the face of an objection." *In re Armstrong*, 320 B.R. 97, 105 (Bankr. N.D. Tex. 2005). Having found that Debtors have rebutted the

presumption of validity, eCAST must prove by a preponderance of the evidence that the claims should be allowed as filed. *In re Pursley*, 451 B.R. 213, 230-34 (Bankr. M.D. Ga. 2011); *see In re Adelphia Commc'ns Corp.*, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007) ("Once an objectant offers sufficient evidence to overcome the *prima facie* validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim") (internal citation and quotation marks omitted). For purposes of this determination, this Court will consider all the documentation and evidence provided by eCAST.

This Court will look to state law to determine if eCAST has met its burden of proving that it is the proper party entitled to enforce the credit card debts. *Pursley*, 451 B.R. at 230-34. "State law governs whether a claim in bankruptcy is valid; the Court does not want the bankruptcy code's expedited claims-proving process and lower evidentiary burdens to be a circumvention for companies who cannot prove their claims in a state court." *Id.* at 232. Under New York State law, an assignee of credit card debt must produce competent "proof of assignment *of the particular account*" on which the claimant seeks to collect. *Citibank (S.D.), N.A. v. Martin*, 11 Misc. 3d 219, 226, 807 N.Y.S.2d 284, 291 (N.Y. Civ. Ct. 2005) (emphasis added).[8] Without proof of the chain of assignment for that account, a claimant lacks standing to sue to collect the debt. *Id.*

Applying New York law, this Court has determined as to Claims 1 and 3 that the aggregate documentation provided by eCAST is insufficient to prove by the preponderance of

[8] Numerous published decisions of New York state courts have followed the holding in *Martin* regarding the proof required to enforce a claim for assigned credit card debt. *See, e.g., MBNA America Bank, N.A. v. Nelson*, 15 Misc.3d 1148(A), 841 N.Y.S.2d 826 (N.Y. Civ. Ct. N.Y. County 2007); *Palisades Collection, LLC v. Gonzalez*, 10 Misc.3d 1058(A), 809 N.Y.S.2d 482 (N.Y. Civ. Ct. N.Y. County 2005); *DNS Equity Group, Inc. v. Lavallee*, 26 Misc. 3d 1228A, 907 N.Y.S.2d 436 (N.Y. Dist. Ct. Nassau County 2010); *LVNV Funding, LLC v. Delgado*, 24 Misc. 3d 1230A, 899 N.Y.S.2d 60 (N.Y. Dist. Ct. Nassau County 2009); *Midland Funding LLC v Wallace*, 34 Misc. 3d 1206A (N.Y. Mount Vernon City Ct. 2012); *Worldwide Asset Purch., LLC v. Akrofi*, 25 Misc. 3d 768, 884 N.Y.S.2d 631 (N.Y. Ithaca City Ct. 2009). These decisions are all from New York trial level courts of limited dollar amounts in controversy jurisdiction; this is not surprising given that assigned credit card debts often do not have substantial balances owed, resulting in cases being filed before courts of limited jurisdiction and appeals often not being taken.

the evidence that the assignment gave rise to a right to payment under state law, because eCAST has not proven assignment of the specific accounts; however, eCAST has met its burden of proof as to Claim No. 2.

eCAST provided the following documentation in addition to having executed the official proof of claim Form 10: (i) Assignment Nos. 1-3, (ii) Voluminous Documents Nos. 1-3, (iii) Summary Nos. 1-3, (iv) Monthly Statements Nos. 1-3; and (v) Affidavit Nos. 1-3. These documents will be analyzed in turn.

i. Assignment Nos. 1-3

The Assignment of Accounts Nos. 1-3 state, *inter alia*, that the original creditor assigned to eCAST all rights and interest in the original creditor's unsecured consumer loan accounts, which are described on various "computer files." The Assignment of Accounts are signed by the original creditor. However, the Debtors' specific information is not included, and Debtors' name and account number are nowhere to be found.

ii. Voluminous Documents Nos. 1-3

The unsigned Voluminous Documents Nos. 1-3 contain an explanation of unavailable or voluminous documentation for each claim. These documents, however, do not include Debtors' names or a balance owed on the account, although each does include the last four digits of an account number in the upper left hand corner of the document.

iii. Summaries Nos. 1-3

The Summaries Nos. 1-3 list Debtors' names and address, the last four digits of their social security numbers, the last four digits of an account number, and the current balance owed as of the petition date. The account summaries for Claims No. 1 and 2 are very similar to the

debts as scheduled by Debtors, with the exception of the party to whom the debt is currently owed. Debtors did not schedule a claim similar to Claim No. 3.

iv. Monthly Statements Nos. 1-3

The Monthly Statements Nos. 1-3 include Debtors' monthly account statements from the original credit card issuer.

v. Affidavit No. 1-3

The Affidavits of purchase for each Claim are the critical distinction in this case, and are not the same. For Claim No. 1 and Claim No. 3, eCAST included a self-serving declaration from its employee, Benison, that "[a]ccording to the records of eCAST, on or about October 21, 2008, eCAST purchased account number ending in 7827 from [creditor]" and "eCAST is the current owner of the Account and caused a Proof of Claim for the account to be filed in the Debtor's bankruptcy case." However, eCAST has not provided an affidavit or declaration from HSBC or HSBC Nevada that it sold these specific Debtors' accounts to eCAST.

For Claim No. 2, however, eCAST filed Affidavit No. 2, in which Stephenson swore on behalf of the assignor FIA that "Account Number 5274, formerly account number 0402, originally known as 0819, was opened on 8/29/02 by Selina E. Taranto" and that "said agreement and account was, on 12/16/2008, sold transferred and set over unto eCAST . . . with full authority to do and perform all acts necessary for collection, settlement, adjustment, compromise or satisfaction of the said claim . . . ." [dkt item 36] The affidavit of Stephenson is clear and direct evidence that FIA sold the debt owed by Debtors to FIA to eCAST, and includes Debtors' names, the date the debt was transferred, Debtors' account number, and the amount owed on the debt.

Taken as a whole, the Court finds that the documentation and evidence in support of Claims No. 1 and No. 3 was not adequate to prove by the preponderance of the evidence that the original creditors (HSBC and HSBC Nevada) assigned Debtors' specific accounts to eCAST, thereby creating in eCAST a legal right to payment of these accounts. The Court also concludes that, taken as a whole, the documentation and evidence in support of Claim No. 2 is adequate to prove by the preponderance of the evidence that the original creditor (FIA) assigned Debtors' specific FIA account to eCAST, thereby creating in eCAST a legal right to payment of this account. Thus, in the context of assigned credit card debt, where the presumption of validity has been established and then rebutted, one manner by which eCAST as assignee can meet its burden of proof and demonstrate that it has a legal right to payment of the subject account(s) is if the original assignor creditor declares under penalty of perjury that it assigned Debtors' specific account(s) to eCAST on a specific date, and includes the debtor's name, the account number redacted to the last four digits, and the account balance owed as of at the time of transfer.

This Court believes that applying the respective burdens in this fashion strikes the appropriate balance between "evidence a debtor can produce to prove no assignment has taken place or that the claimant is not the real party in interest" with the need for "underlying documentation proving the assignment." *Pursley*, 451 B.R. at 233. Here, eCAST had numerous opportunities to obtain affidavits similar to Affidavit No. 2 to prove the validity of Claim Nos. 1 and 3, but it failed to do so.[9]

Accordingly, this Court concludes that eCAST did not prove by the preponderance of the evidence that it has a right to payment from Debtors for Claims Nos. 1 and 3 under New York

[9] Whatever the reason for eCAST's failure to obtain these affidavits for Claim No.1 and 3, "[t]he fact that a party's business practices make it difficult to produce evidence to prove its case does not permit courts to ignore evidentiary rules in deciding a disputed matter." *In re Shank*, 315 B.R. 799, 810 (Bankr. N.D. Ga. 2004).

law. On the other hand, the Court finds that eCAST did meet its evidentiary burden with respect to Claim No. 2.

*B. The eCAST Claims Are Not Invalid under New York Law for Lack of Notice to Debtors of the Assignments*

Debtors also argue that eCAST's Claims should be expunged because the assignments are invalid under applicable New York law. Specifically, Debtors allege that "under New York law, an alleged assignee must submit proof that the debtor was given notice of the assignment before it has a duty to pay the assignee." [dkt item 34 at ¶ 5] In support of their position, Debtors cite *Caprara v. Charles Court Assoc.*, 216 A.D.2d 722, 723, 627 N.Y.S.2d 836, 837 (N.Y. App. Div. 3d Dep't 1995); *Tri City Roofers v. Northeastern Indus. Park*, 91 A.D.2d 769, 770, 458 N.Y.S.2d 7, 8 (N.Y. App. Div. 3d Dep't 1982), *aff'd*, 61 N.Y.2d 779, 461 N.E.2d. 298, 473 N.Y.S.2d 161 (N.Y. 1984); and New York Uniform Commercial Code (the "New York U.C.C.") § 9-406. The Court, however, finds this legal argument to be in error.

Turning first to the statute, § 9-406 of the New York U.C.C. states that:

> an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee.

N.Y. U.C.C. LAW § 9-406 (McKinney 2012). In other words, a debtor whose debt has been assigned may discharge his obligation if he pays the assignor before the debtor receives notification of the assignment. Thus, the statute prevents different creditors from being paid twice for the same debt. Here, Debtors have not alleged or provided evidence that they have fully satisfied the debts owed to the original creditors before they received any notification of any assignments. As a result, § 9-406 of the New York U.C.C. will not aid Debtors in disputing eCAST's claim pursuant to 11 U.S.C. § 502(b)(1).

Debtors' reliance on *Caprara* and *Tri City Roofers* is similarly misplaced. In *Tri City Roofers*, a judgment debtor satisfied its obligation to the assignor's judgment creditor before it received actual notice of the assignment of the debt, and the judgment debtor was therefore not liable on the debt for the amount paid. 91 A.D.2d at 770, 458 N.Y.S.2d at 8. Thus, *Tri City Roofers* involved a scenario similar to the one that New York U.C.C. § 9-406 is designed to avoid, namely preventing double payment on the same debt. Debtors have not alleged that they satisfied the debts reflected in eCAST's Claims. Likewise, *Caprara* does not support Debtors' argument, because it stands for the proposition that defenses a debtor may have against an assignor may also be raised against the assignee. 216 A.D.2d at 723, 627 N.Y.S.2d at 837. Debtors have not alleged that they have any defenses to the debt that eCAST asserts it obtained by assignment. Therefore, Debtors have failed to cite to any legal precedent supporting their argument that their obligation to pay eCAST did not arise until after they received notice of the assignment, and that argument is rejected.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Objection is GRANTED with respect to Claim Nos. 1 and 3, and Claim No. 1 and Claim No. 3 are hereby expunged.

**ORDERED**, that the Objection is DENIED with respect to Claim No. 2, and Claim No. 2 is hereby allowed, and shall be paid as a general unsecured claim under Debtors' Chapter 13 plan.

**Dated: March 27, 2012**
**Central Islip, New York**

United States Bankruptcy Court Eastern District of New York

**Alan S. Trust**
**United States Bankruptcy Judge**